Citation Nr: 1513857 
Decision Date: 03/31/15 Archive Date: 04/03/15

DOCKET NO. 10-46 356 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Portland, Oregon


THE ISSUES

1. Entitlement to a disability rating in excess of 30 percent for chronic major depressive disorder and anxiety disorder, not otherwise specified (NOS), prior to August 4, 2010.

2. Entitlement to a disability rating in excess of 50 percent for chronic major depressive disorder and anxiety disorder, NOS, from August 4, 2010.

3. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Appellant represented by: Oregon Department of Veterans' Affairs




WITNESS AT HEARING ON APPEAL

The Veteran's representative


ATTORNEY FOR THE BOARD

D.S. Lee, Counsel


INTRODUCTION

The Veteran served on active duty from April 1996 through April 1998.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2010 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Portland, Oregon, which among other issues, denied the Veteran's claim for a disability rating in excess of 30 percent for chronic major depressive disorder. A timely Notice of Disagreement (NOD) limited to that issue was received from the Veteran in December 2010. After a Statement of the Case (SOC) was issued in June 2012, the Veteran perfected his appeal as to that issue in August 2010, via VA Form 9 substantive appeal.

The Veteran's substantive appeal reflects that the Veteran requested a video conference hearing in this matter before a Board member. Accordingly, a video conference hearing was scheduled to take place before the undersigned VLJ in January 2013, with the Veteran attending from the Portland RO. Notice to that effect was mailed to the Veteran in November 2012. The Veteran did not appear at the scheduled hearing; however, arguments were raised on the record by the Veteran's accredited representative. A transcript of these proceedings is associated with the record.

In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) requires that the VLJ who conducts a hearing must fulfill two duties in order to comply with the cited regulation. Namely, the VLJ is under (1) a duty to fully explain the issues on appeal, and (2) a duty to suggest the submission of evidence that may have been overlooked. The proceedings focused on the elements necessary to substantiate the Veteran's claim, and the Veteran's representative advanced arguments on the Veteran's behalf which addressed those necessary elements. Therefore, the Board finds that, consistent with Bryant, the VLJ complied with the duties set forth in 38 C.F.R. § 3.103(c)(2).

In April 2013, the Board remanded the issues on appeal for further development, to include: obtaining records for any psychiatric treatment received by the Veteran since June 2012; arranging a VA examination of the Veteran's major depressive disorder; and readjudication of the issues on appeal, and if necessary, issuance of a Supplemental Statement of the Case (SSOC). The directed development was performed.

During the course of that development, the RO issued a November 2014 rating decision which awarded a higher 50 percent disability rating for the Veteran's major depressive disorder and anxiety disorder, not otherwise specified, effective August 4, 2010. In a November 2014 SSOC, the RO determined that a rating higher than 50 percent was not warranted. Notwithstanding the partial grant awarded in the November 2014 rating decision, the Veteran has not expressed satisfaction and has expressed his intent to continue his appeal. As such, the Board presumes that the Veteran is seeking the maximum available benefit for his claim for a higher disability rating for his service-connected major depressive disorder and anxiety disorder, NOS, and as such, maintains jurisdiction over the issue concerning the disability ratings assigned for that disability. See Fenderson v. West, 12 Vet. App. 119, 126 (1999); AB v. Brown, 6 Vet. App. 35, 38 (1993).


FINDINGS OF FACT

1. Prior to June 10, 2010, the Veteran's major depressive disorder and anxiety disorder, NOS was manifested by depressed mood; anxiety; chronic sleep impairment; isolative behavior; and overall, mild social and occupational impairment; occupational and social impairment with reduced reliability and productivity is not shown during this period. 

2. From June 10, 2010, the Veteran's major depressive disorder and anxiety disorder, NOS has been manifested by depressed mood; anxiety; intermittent panic attacks; chronic sleep impairment; mild short-term memory loss marked by the need to write things down and forgetting to perform tasks; flattened affect; disturbances of motivation and mood; suicidal ideation; anger; and difficulty in maintaining effective work and social relationships; neither occupational and social impairment with deficiencies in most area nor total occupational and social impairment is shown. 

3. Service connection is in effect for the Veteran for left knee retropatellar pain syndrome with synovitis and degenerative joint disease, rated as 20 percent disabling, and for major depressive disorder and anxiety disorder, NOS, secondary to his left knee disability, and rated as 50 percent disabling.

4. For the purposes of 38 C.F.R. § 4.16(a), the Veteran has a single disability arising out of common etiology that is rated as 60 percent disabling.

5. The Veteran's service-connected disabilities, in and of themselves, do not render the Veteran incapable of securing or following a substantially gainful occupation


CONCLUSIONS OF LAW

1. The criteria for a disability rating in excess of 30 percent for major depressive disorder and anxiety disorder, NOS, prior to June 10, 2010, are neither met nor approximated. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 4.1, 4.3, 4.7, 4.125, 4.126, 4.130, Diagnostic Code 9434 (2014).

2. The criteria for a disability rating of 50 percent, and no more, for major depressive disorder and anxiety disorder, NOS, from June 10, 2010 through August 3, 2010, are met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 4.1, 4.3, 4.7, 4.125, 4.126, 4.130, Diagnostic Code 9434 (2014).

3. The criteria for a disability rating in excess of 50 percent for major depressive disorder and anxiety disorder, NOS, from August 4, 2010, are neither met nor approximated. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 4.1, 4.3, 4.7, 4.125, 4.126, 4.130, Diagnostic Code 9434 (2014).

4. The criteria for a TDIU are not met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 4.1, 4.16, 4.18, 4.19, 4.25 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's duties to notify and assist claimants in substantiating a claim for VA benefits are found at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014) and 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014).

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical evidence or lay evidence that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002). In accordance with 38 C.F.R. § 3.159(b)(1), proper notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 

VA's notice requirements apply to all five elements of a service-connection claim: veteran status, existence of a disability, a connection between a veteran's service and the disability, degree of disability, and effective date of the disability. Dingess v. Nicholson, 19 Vet. App. 473 (2006). In rating cases, a claimant must be provided with information pertaining to assignment of disability ratings (to include the rating criteria for all higher ratings for a disability), as well as information regarding the effective date that may be assigned. Id. Such notice should be provided to a claimant before the initial unfavorable decision on a claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004).

In this case, a pre-rating September 2010 letter notified the Veteran of the information and evidence needed to substantiate his claim for a higher disability rating for his service-connected depression. Consistent with Dingess, the letter also notified the Veteran of the process by which VA assigns effective dates and disability ratings. After affording the Veteran reasonable opportunity to respond, his claim was adjudicated in the RO's November 2010 rating decision. Thus, because the VCAA notice was legally sufficient, VA's duty to notify has been satisfied.

As noted, the evidence in this case has raised an implicit claim for a TDIU. To that extent, the prescribed notice concerning the Veteran's claim for a TDIU was provided to the Veteran in a November 2013 letter. Thereafter, the Veteran's claim for a TDIU was adjudicated by the RO in a November 2014 SSOC. Hence, to the extent that notice concerning the Veteran's claim for a TDIU may be construed as having been untimely, the Veteran is not shown to be prejudiced by the late timing of this notice. See Mayfield v. Nicholson, 20 Vet. App. 537, 543 (2006); see also Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006) (the issuance of a fully compliant VCAA notification followed by readjudication of the claim, such as in an SOC or SSOC, is sufficient to cure a timing defect).

In addition, VA has fulfilled its duty to assist in obtaining identified and available evidence needed to substantiate the Veteran's claims. His service treatment records, claims submissions, lay statements, identified and relevant private treatment records, VA treatment records, and employment information have been associated with the record. During the course of this appeal, the Veteran was afforded VA examinations of his depression and anxiety in December 2009, October 2010, and May 2014. A VA examination of his service-connected left knee disability was also conducted in June 2014. These examinations, along with the other evidence of record, are fully adequate for the purposes of determining the current severity of his depression and anxiety, and also for the purpose of determining whether the Veteran's service-connected disabilities render him incapable of securing and following a substantially gainful occupation. See Barr v. Nicholson, 21 Vet. App. 303 (2007).

Overall, there is no evidence of any VA error in notifying or assisting the Veteran that reasonably affects the fairness of this adjudication.

I. Increased Disability Ratings

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities. Ratings are based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. See 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

Where there is a question as to which of two ratings applies, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

In order to evaluate the level of disability and any changes in severity, it is necessary to consider the complete medical history of the veteran's disability. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). Where entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994).

Staged ratings are appropriate in any increased rating claim in which distinct time periods with different ratable symptoms can be identified. The relevant focus for adjudicating an increased rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim. Hart v. Mansfield, 21 Vet. App. 505 (2007).

When a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in the veteran's favor. 38 C.F.R. §§ 3.102, 4.3. Once the evidence is assembled, the Board is responsible for determining whether the preponderance of the evidence is against the claim. If so, the claim is denied; if the evidence is in support of the claim or is in equal balance, the claim is allowed. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

For all periods relevant to this appeal, the Veteran's service-connected psychiatric disability has been rated in accordance with the criteria under the General Rating Formula for Mental Disorders (General Formula). Under the General Formula, a 30 percent disability rating is appropriate where the evidence shows that the Veteran's psychiatric disability is productive of occupational and social impairment with an occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and normal conversation), due to such symptoms as depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, or mild memory loss (i.e., forgetting names, directions, and recent events).

A 50 percent disability rating encompasses psychiatric disabilities that are manifested by occupational and social impairment with reduced reliability and productivity due to such symptoms as a flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; or difficulty in establishing and maintaining effective work and social relationships.

A 70 percent disability rating is assigned for psychiatric disabilities that are manifested by occupational and social impairment, with deficiencies in most areas such as work, school, family relations, judgment, thinking or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech that is intermittently illogical, obscure or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); or the inability to establish and maintain effective relationships.

A 100 percent disability rating is warranted where the psychiatric disability under consideration is productive of total occupational and social impairment due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting himself or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time and place; or memory loss for the names of close relatives, own occupation, or own name.

Turning to the evidence, the Board notes that the record includes five lay statements provided in November and December of 2009 by the Veteran's friends and classmates. In summary, these statements describe that the Veteran appeared to be demonstrating changes in mood and appeared to be "down in the dumps." A November 2009 statement from the Veteran's brother expresses that the Veteran appeared to be showing changes in his general attitude and depression. In a December 2009 statement, the Veteran expressed that he was enrolled in undergraduate courses but that he was experiencing difficulty in class due to symptoms of depression and sleeplessness. In his July 2010 claim for a higher disability rating, the Veteran alleged that his depression had worsened overall and that he was experiencing unspecified emotional problems and difficulty controlling his anger.

Concurrent with the above, the Veteran underwent a VA psychiatric examination in December 2009. At that time, he reported ongoing depression and that he often ruminated about feelings of worthlessness and helplessness due to his inability to remain active and to keep up physically with his friends and nine year old daughter. Socially, he reported that got along well with his daughter and that he visited with acquaintances at a local bowling alley, where he liked to bowl three games per week. Occupationally, he stated that he was not employed but that he was enrolled as a full-time student. Although he reported having some difficulty performing his coursework due to diminished concentration, he did state that he was passing his classes. Also, he reported that he participated in a work experience program in which he worked 360 hours as a fire marshal's assistant and participated in home inspections. Notably, he stated that he had not attempted to find work formally because of his status as a full-time student.

A mental status examination performed during the December 2009 VA examination revealed flat and irritable affect; dysthymic mood; thought content that was described as nihilistic but free of suicidal or homicidal ideation; and long response latencies following the examiner's questions. Still, no evidence of any cognitive impairment was seen. The examiner diagnosed mild and chronic major depressive disorder that was manifested by sleep disturbance; feelings of hopelessness and worthlessness; decreased pleasure and motivation; mild social and occupational interference due to frequent irritability, distance from others, and ruminating about hopelessness and worthlessness. A Global Assessment of Functioning (GAF) scale score of 65 was assigned.

Relevant clinical treatment records include VA treatment records from July 2010, which show that the Veteran was complaining of decreased motivation, worsening depression, constant irritability marked by the desire to break things, sleep loss, appetite loss, daily thoughts of suicide, and inability to exercise and be active. Overall, the Veteran reported that he felt as though his symptoms had worsened since he discontinued taking Methadone treatments for his left knee disability on June 10, 2010. Subsequent VA treatment records through October 2010 show that the Veteran was seen on a monthly basis for similar complaints as those noted during the July 2010 treatment. Notably, during the September 2010 VA treatment visit, the Veteran endorsed new symptoms of memory impairment that necessitated that he write things down. Apparently, the Veteran had not been attending classes over that time period, as he reported during treatment in October 2010 that he was re-enrolling in school.

During VA examination in October 2010, accompanied by his girlfriend of two months, the Veteran continued to report depression; frequent suicidal ideation but without specific plan; feelings of worthlessness and hopelessness; low energy level and motivation; lack of concentration; poor appetite; sleeping only four hours per night; loss of interest in pleasurable activities; chronic anxiety; outbursts of anger and irritability marked by lashing out at his friends and family and fantasizing about beating people up; being uncomfortable in crowds; and chronic nervousness. Again, he stated that he seemed to be angry constantly since discontinuing Methadone. His girlfriend added that the Veteran seemed to have a tendency for becoming enraged over benign and simple questions. Socially, the Veteran reported that he still visited with people at the bowling alley. Occupationally, he stated that he had indeed taken a leave of absence from his undergraduate coursework because of his symptoms. Still, he indicated that he had returned to classes and was working toward his goal of obtaining an administrative bachelor's degree in fire service. He reported that he aspired to one day be a fire marshal.

A mental status examination revealed dysphoric, anxious, and irritable mood but a wide range of affect. Remaining aspects of the examination were grossly normal. The examiner opined further that the Veteran meets the DSM-IV criteria for chronic, recurrent, and severe major depressive disorder without psychotic features and anxiety disorder, NOS. Overall, the examiner opined that the Veteran was capable of completing his basic activities of daily living; still, the examiner characterized the Veteran as having severe social impairment due to his daily anger control problems and difficulty communicating with others. The examiner concluded also that the Veteran demonstrated significant academic impairment that was attributable to significant concentration problems. Notably, the examiner determined that a finding as to employability could not be made because the Veteran had not attempted to work since 2004, although specific reasons are not provided. A GAF score of 41 was assigned due to serious social, emotional, and academic impairment.

Subsequent VA treatment records through December 2013 show that the Veteran continued to be followed for similar symptomatology as that noted during the October 2010 examination. Although symptoms were apparently controlled initially by medication, the Veteran apparently had a depressive relapse in October 2012. At that time, the Veteran reported depression, sleep problems, decreased concentration, fatigue, anhedonia, elevated appetite, and stress due to a recent criminal conviction and related legal problems. A mental status examination revealed depressed mood and constricted affect. Similar symptoms were noted during subsequent VA treatment visits through 2013; however, in August 2013, the Veteran indicated that he was remaining active to some degree, stating that he had been busy helping his uncle remodel his home. Repeated mental status examinations over that period were grossly normal except for chronically noted depression and anxiety.

Concurrent with the VA treatment noted above, the Veteran received private counseling from J.F. Intake records from February 2012 express that the Veteran was being evaluated for anger management related to dysfunctional family situation and his recent criminal conviction. Symptoms endorsed by the Veteran at that time included anger, depression, and confusion. A multi-axis diagnosis rendered at that time included Axis I diagnoses of adjustment disorder with decreased mood and depressive disorder, NOS. A GAF score of 58 was assigned. Subsequent records from February 2013 note that the Veteran had abandoned any effort to return to school at that time. Still, a marginally improved GAF score of 60 was assigned at that time.

VA treatment records dated from January through May 2014 document ongoing complaints of depression that was managed by medication but waxed and waned in severity. Mental status examinations continued to indicate anxiety and depression. Reported symptoms were consistent with those noted above, although the severity of those symptoms also appeared to wax and wane.

During a May 2014 VA examination, the Veteran continued to report depression; dysphoric mood that was present reportedly 60 to 70 percent of the time; being isolative and avoiding interactions with others; being prone to "ranting and raving"; having feelings of hopelessness and helplessness due to his physical limitations; insomnia; mild impairment of memory manifested by forgetting tasks or recent conversations; decreased concentration; and decreased appetite.

In terms of social functioning, he reported that he took his daughter to and from school on most days and visited with her on Tuesday evenings. He stated that he had been in a romantic relationship one month ago with an ex-girlfriend, but that their relationship was marked by yelling and screaming. According to the Veteran, he was easily irritated with her and he was not interested in doing activities with her. He stated that, in general, he spent most of his time either at home watching movies or at the bowling alley. He stated that he took his daughter bowling and that he also had three or four co-workers with whom he interacted regularly at the bowling alley. He also reported that he went out to eat and went fishing with his friends.

Occupationally, the Veteran reported that he worked at the bowling alley 15 to 20 hours a week and that he was interested in moving into a full-time position, but that he would only do so if he was given a raise in pay. He reported also that he was back in school and studying again to be a fire inspector. He stated that he anticipated completing his degree in one year. Overall, the Veteran stated that he performed activities as needed and described minimal work impairment due to depression and anxiety, reporting that at times he felt less motivated and undervalued.

On mental status examination, the examiner noted symptoms of depressed mood; anxiety; chronic sleep impairment; mild memory loss characterized by forgetting names, directions, or recent events; flattened affect; and disturbed motivation and mood. The examiner noted also that the Veteran demonstrated a euthymic mood and did not appear to demonstrate any significant psychiatric distress or cognitive impairment. The Veteran was oriented to person, place, and the task at hand. Notably, the Veteran denied having any suicidal ideation at that time. The examiner opined that the Veteran's disability was marked by occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care, and conversation. A new GAF score was not assigned.

A subsequent VA treatment record dated September 2014 documents ongoing depression. The Veteran continued to report part-time employment at the bowling alley.

As noted above, the symptomatology shown during the Veteran's December 2009 VA examination included flattened and irritable affect, dysthymic mood, nihilistic thought content, long response latencies by the Veteran in response to the examiner's questions but no frank cognitive impairment, sleep disturbances, ruminations and feelings of hopelessness and worthlessness, decreased pleasure and motivation, and distance from others. Notably, there was no evidence of suicidal or homicidal ideation. Overall, the demonstrated symptomatology was characterized as being indicative of mild social and occupational interference, and indeed, an Axis I diagnosis of mild and chronic major depressive disorder was rendered at that time.

Notably, the statements received from the Veteran, his brother, and his friends in November and December of 2009 document perceived depression and mood changes. According to a December 2009 statement from J.B., the Veteran's mood appeared to be affecting the Veteran's ability to attend his scheduled undergraduate classes. In a statement also received that month, the Veteran alleged generally that his depression was impacting his ability to complete his coursework. Nonetheless, did report during the December 2009 VA examination that he was passing his classes and that he was able to complete 360 hours in a work experience program. Socially, he reported having a good relationship with his daughter and that he enjoyed leisure activities such as bowling three times a week and visiting with acquaintances at the bowling alley. As discussed more fully below, however, the evidence appears to indicate a downturn in the Veteran's psychiatric symptoms after his Methadone treatments were discontinued on June 10, 2010.

Overall, the evidence reflects that the symptomatology associated with the Veteran's psychiatric disability prior to June 10, 2010 is consistent with the criteria for a 30 percent disability rating under the General Formula. In that regard, the symptoms noted during the December 2009 VA examination include such symptoms as depressed mood; anxiety (as shown by feelings of hopelessness and helplessness); and chronic sleep impairment. Although the Veteran's symptoms prior to June 10, 2010 include some degree of isolative behavior and distance from others, given his ongoing relationship with his daughter and acquaintances at the bowling alley, his ongoing interest in leisure activities, and his ability to perform successfully in the classroom and in his work experience program, the evidence seems to indicate overall a relatively mild degree of social and occupational impairment. In that regard, the level of social and occupational functioning shown prior to June 10, 2010 is not consistent with reduced reliability and productivity, outright deficiencies, or gross impairment, as contemplated by the criteria for ratings higher than 30 percent under the General Formula. For these reasons, the Board concludes that the Veteran is not entitled to a disability rating higher than 30 percent prior to June 10, 2010.

As alluded to above, however, the evidence does indicate that the Veteran's psychiatric symptoms took a downturn after Methadone treatments for his left knee were discontinued on June 10, 2010. In that regard, the Veteran reported during VA treatment in July 2010 that his symptoms had worsened and that he was more irritable, more depressed, angrier, and was having frequent and regular thoughts of suicide. He stated that his anger was such that he often felt like breaking things. In addition to those progressive symptoms, he reported ongoing sleep disturbances, loss of appetite, and inability to be active. During his October 2010 VA examination, the Veteran continued to endorse these symptoms, as well as other symptoms of decreased concentration, anhedonia, chronic anxiety, chronic nervousness, and dislike of crowds. Notably, these symptoms were productive of significant and severe social and academic functioning, and indeed, the Veteran reported at various times since June 10, 2010 that he was on leave from his academic pursuits. Similar symptomatology was noted consistently in subsequent VA and private treatment records through October 2014 and during his May 2014 VA examination.

Socially, the Veteran reported consistently that he maintained a close relationship with his daughter. He continued to visit with friends at the bowling alley. In August 2013, he reportedly was keeping busy by helping his uncle remodel his house. During his May 2014 VA examination, he related that he enjoyed other activities with his friends, such as going out to eat and going fishing. Occupationally, despite the Veteran's intermittent leaves of absence, he has notably been able to maintain at least part-time employment at the bowling alley. Indeed, he related during his May 2014 examination that he was interested in a full time position. Although he stated that he would only take the position if it was accompanied by a raise in his rate of pay, he did not express any other reservations or limitations in his ability or desire to take a full-time position at the bowling alley. The Board notes also that as of the May 2014 examination, he had returned to his undergraduate coursework and was anticipating on receiving his undergraduate degree in fire services within a year.

Overall, the evidence indicates that the criteria for a 50 percent disability rating, and no more, are met for the period from June 10, 2010. To that extent, the Board grants a higher 50 percent disability rating for the Veteran's chronic major depressive disorder and anxiety disorder, NOS for the period from June 10, 2010 through August 3, 2010; however, denies the Veteran's claim for a disability rating higher than 50 percent from August 4, 2010.

In support of the foregoing conclusion, the Board observes that, consistent with the criteria for a 50 percent disability rating under the General Formula, the evidence since June 10, 2010 does show symptoms such as depressed mood; anxiety; intermittent panic attacks; chronic sleep impairment; mild short-term memory loss marked by the need to write things down and forgetting to perform tasks; flattened affect; disturbances of motivation and mood; and difficulty in maintaining effective work and social relationships.

Notably, the Veteran's constellation of symptoms also includes suicidal ideation of carrying frequency, albeit without specific plan or attempts and some irritability and anger control problems that approach the level of impaired impulse control contemplated by the criteria for a higher 70 percent rating. Nonetheless, as noted above, the Veteran has been able to maintain a relatively high degree of social and academic involvement, as described above. He has been able to maintain at least part-time employment. His other symptoms, which are noted above, combined with the absence of other symptoms such as obsessional rituals, illogical, obscure, or irrelevant speech, near-continuous panic or depression, disorientation, neglect of hygiene, and/or difficulty adapting to stressful settings and the Veteran's ability to maintain employment, depicts an overall constellation of symptoms that is most consistent with the criteria for a 50 percent disability rating under the General Formula. Finally, the Board also observes that the level of social and occupational functioning shown by the Veteran since June 10, 2010 is not consistent with outright inability to establish and maintain effective relationships (as contemplated for a 70 percent rating) or with total occupational and social impairment (as contemplated for a 100 percent disability rating). For these reasons, the Board concludes that the overall disability picture is most consistent with the assignment of a 50 percent disability rating, and no higher for the period from June 10, 2010.

The Board acknowledges that the evidence indicates assigned GAF scores which waver broadly from 65 (assigned during the December 2009 VA examination) to 41 (assigned during the October 2010 VA examination) to 60 (assigned during private counseling with J.F. in February 2013) and back up to 65 (assigned during the May 2014 VA examination). In assessing the degree of psychiatric disability, GAF scores are for application and reflect the "psychological, social, and occupational functioning on a hypothetical continuum of mental health- illness." Richard v. Brown, 9 Vet. App. 266, 267 (citing DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th ed. (DSM-IV) at 32). According to the DSM-IV, a GAF score ranging from 71 to 80 denotes a disorder where, if some symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after a family argument); no more than a slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork). A GAF score in the range of 61 to 70 is indicative of some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy or theft within the household) but generally functioning pretty well while having some meaningful interpersonal relationships. A GAF score falling in the range of 51 to 60 is defined as indicating moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co- workers). GAF scores which fall in the range from 41 to 50 indicate serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning. Finally, GAF scores ranging from 31 to 40 are indicative of some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. See Carpenter v. Brown, 8 Vet. App. 240, 242-244 (1995).

The Board notes that the newer DSM-V has now been officially released, and 38 C.F.R. § 4.130 has been revised to refer to the DSM-V. The DSM-V does not contain information regarding GAF scores. However, since much of the relevant evidence was obtained during the time period that the DSM-IV was in effect, the Board will still consider this information as relevant to this appeal. Further, there is no indication that the Veteran's diagnoses and assigned GAF scores would be different under the DSM-V.

The Board admonishes that GAF scores are not conclusively dispositive as to a veteran's level of psychiatric impairment. Rather, they are merely parts of a whole body of evidence that must be and has been considered in arriving at a decision.

Although encompassing a broad range, the GAF scores assigned over the course of the appeal appear to be accurate reflections of the waxing and waning nature of the Veteran's symptoms. Thes scores, when considered in conjunction with the Veteran's constellation of symptoms are generally consistent with the extent of functional loss shown by the Veteran over the appeals period, and moreover, are also generally consistent with the disability ratings contemplated in this decision.

The Board has also considered the provisions under 38 C.F.R. § 3.321(b)(1), which govern the assignment of extra-schedular disability ratings. However, in this case, the record does not show that the severity of the Veteran's major depressive disorder and anxiety disorder, NOS are so exceptional or unusual such as to warrant the assignment of a higher rating on an extra-schedular basis. See 38 C.F.R. § 3.321(b)(1) .

The threshold factor for extra-schedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Thun v. Peake, 22 Vet. App. 111 (2008). In this regard, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule and the assigned schedular evaluation is therefore adequate, and, no extra-schedular referral is required. Id., see also VAOGCPREC 6-96 (Aug. 16, 1996). Otherwise, if the schedular rating does not contemplate the claimant's level of disability and symptomatology and is found inadequate, VA must determine whether the claimant's exceptional disability picture exhibits other related factors, such as those provided by the extra-schedular regulation (38 C.F.R. § 3.321(b)(1) ) as "governing norms" (which include marked interference with employment and frequent periods of hospitalization).

Here, the evidence does not show that the Veteran's disability presents an exceptional disability picture that renders inadequate the available schedular ratings. A comparison between the level of severity and symptomatology of the Veteran's assigned rating with the established criteria found in the General Formula shows that the rating criteria reasonably describe the Veteran's disability level, symptomatology, and extent of social and occupational impairment. As discussed above, higher disability ratings are available under the General Formula; however, the Veteran's disability has not been productive of a symptomatology or overall disability picture that is consistent with the assignment of higher disability ratings than those contemplated and awarded here. As such, it cannot be said that the available schedular ratings for the Veteran's disability are inadequate. Moreover, to the extent that the Veteran's disability has affected his social and occupational functioning, there is no evidence that it has resulted in marked interference with his employment. As noted above, the Veteran reportedly maintained longstanding part-time employment while working toward an undergraduate degree. Similarly, there is no evidence in the record that the Veteran's psychiatric disability has ever required the Veteran to be hospitalized for in-patient observation or care.

Based on the foregoing, the Board finds that the requirements for an extra-schedular evaluation for the Veteran's service-connected chronic major depressive disorder and anxiety disorder, NOS, under the provisions of 38 C.F.R. § 3.321(b)(1), have not been met. Thun, 22 Vet. App. 111; Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218 (1995).

The Board has also considered whether "staged" disability ratings, beyond those already provided, are warranted by the evidence. The symptomatology shown upon examination and treatment, however, has been essentially consistent and fully contemplated by the assigned disability ratings. As such, there is no basis for further staged disability ratings in connection with the Veteran's PTSD.

Accordingly, the Board concludes that the Veteran is entitled to a disability rating of 30 percent, and no higher, for all periods prior to June 10, 2010; and, is entitled to a 50 percent disability rating, and no higher, from June 10, 2010. To the limited extent that the Veteran is awarded a higher 50 percent disability rating for the period from June 10, 2010 through August 3, 2010, this appeal is granted.

II. TDIU

As noted above, the Veteran has alleged that a combination of his service-connected psychiatric disability and left knee disability has rendered him unable to complete coursework toward an undergraduate degree. In his August 2012 substantive appeal, he alleged further that he has been unable to maintain gainful employment since 2003. Given these assertions, an implicit claim for a TDIU has been raised by the record. Rice v. Shinseki, 22 Vet. App. 447 (2009). A formal application for a TDIU was also filed by the Veteran in December 2013. In it, he asserts that he had not held gainful full-time employment since September 2006 due to the disabilities caused by his depression and left knee disorder.

Under VA laws and regulations, a TDIU may be assigned upon a showing that a veteran is unable to secure or follow a substantially gainful occupation due solely to impairment resulting from his or her service-connected disabilities. See 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16. In that vein, the Board notes that service connection is in effect for the Veteran for major depressive disorder and anxiety disorder, NOS, rated as 50 percent disabling, and for left knee retropatellar pain syndrome with synovitis and degenerative joint disease, rated as 20 percent disabling.

In adjudicating a TDIU claim, consideration may be given to a veteran's level of education, special training, and previous work experience; however, age and the impairment caused by non-service-connected disabilities are not for consideration. See 38 C.F.R. §§ 3.341, 4.16, 4.19. Marginal employment, defined as an amount of earned annual income that does not exceed the poverty threshold determined by the United States Department of Commerce, Bureau of the Census, shall not be considered substantially gainful employment. 38 C.F.R. § 4.16(a).

A TDIU may be assigned even where the combined rating for the veteran's service-connected disabilities is less than total if the disabled veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. Specifically, if there is only one such disability, this disability shall be ratable at 60 percent or more; if there are two or more disabilities, there shall be at least one disability that is ratable at 40 percent or more and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). For the purpose of determining the above, the following will be considered as one disability: 1) disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor set forth under 38 C.F.R. § 4.26, if applicable; 2) disabilities resulting from common etiology or a single accident; 3) disabilities affecting a single body system, e.g., orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric; 4) multiple injuries incurred in action; or 5) multiple disabilities incurred as a prisoner of war.

Here, the Board notes that the Veteran's service-connected psychiatric disability has been awarded on the basis that it is secondary to his service-connected left knee disability. Accordingly, the Veteran's psychiatric and left knee disabilities have arisen out of common etiology, and for TDIU purposes, may be treated as one single disability rated as 60 percent disabling. 38 C.F.R. §§ 4.16(a), 4.25 (2014).

In exceptional cases, an extra-schedular rating may be assigned on the basis of a showing of unemployability alone. See 38 C.F.R. § 4.16(b). Such cases are referred to the Director of the Compensation and Pension Service for extra-schedular consideration.

As discussed in detail above, the Veteran's psychiatric disability has resulted in some degree of occupational impairment; though not total impairment. He has reported that, despite his psychiatric symptoms, he has been able to maintain some relationships and friendships, enjoyed a good relationship with his daughter, and remained active academically and in terms of his recreational activities.

Pertinent evidence relating to the Veteran's left knee include VA treatment records from August 2009 through October 2014 which show that the Veteran has been followed regularly for left knee pain that sometimes was severe enough to wake him in the middle of the night. Apparently, the Veteran's pain was managed by a combination of medications which included a course of Methadone in 2010, as well as an ongoing course of Vicodin. Still, radiological studies, which include a 2008 MRI, May 2010 x-rays, and a repeat MRI in 2013 indicated only mild narrowing of the medial joint compartment and irregularities over the cartilagenous surfaces of the left patella. Functionally, the Veteran repeatedly demonstrated a normal gait during repeated physical examinations of the knee. Repeated tests for left knee stability were normal. Range of motion tests performed during VA treatment in May 2010 revealed full extension to zero degrees and only mildly diminished flexion to 130 degrees.

During VA examination of the left knee in June 2014, the Veteran reported ongoing and increased left knee pain with episodes of buckling that had become more frequent. He also reported that he had been having flare-ups of his left knee symptoms six or seven times over the preceding 12 month period. Despite these complaints, an examination of the left knee revealed full muscle strength. Left knee extension was pain free and full to zero degrees. Flexion was limited to 100 degrees with pain reported at the end of motion; however, the Veteran interestingly showed full flexion to 140 degrees during repetitive motion testing. No evidence of recurrent subluxation or dislocation of the left patella was observed. Once again, tests for left knee stability were normal. Based on these findings, the examiner opined that the Veteran did have some occupational limitations due to limited ability to kneel, squat, and climb ladders. Still, the examiner did not opine that the Veteran was unable to secure or follow a substantially gainful occupation; indeed, the examiner observed that the Veteran had not required any time off from work over the preceding 12 months.

Indeed, the Veteran has periodically pursued an undergraduate degree in fire services. Although the evidence does show that his psychiatric symptoms have caused the Veteran to periodically take leave from his academic pursuits, he did report during his May 2014 VA examination that he had returned to school and was anticipating his degree within the next year. There is no indication in the record that the Veteran has been required to abandon his academic pursuit for any reason.

Notably, the Veteran reported during his December 2009 VA examination that he had not previously attempted to work formally because he was in school. In that regard, he did not attribute any occupational failings to his disabilities. Indeed, he reported at that time that he was able to complete 360 hours of work in a work experience program as a fire marshal's assistant. A VA Form 21-4192 containing information from the Veteran's employer, Town and Country Lanes, expresses that the Veteran has worked on a part-time basis as a janitor and lane mechanic since December 2010. Notably, the Veteran's employer reported that the Veteran had not missed any time from work over the preceding 12 months, and moreover, did not require any special concessions or accommodations on the job for any disabilities. Finally, as noted previously, the Veteran reported during his May 2014 VA examination that he was interested in pursuing a full-time position at the bowling alley where he worked. Although he indicated that he would not be interested in full-time work unless it met with an increase in his rate of pay, he did not attribute any limitations of his pursuit of full time employment to either his psychiatric or left knee disabilities.

The weight of the evidence does not support a finding that the Veteran's service-connected disabilities, in and of themselves, render him unable to secure and follow a substantially gainful occupation. Accordingly, the preponderance of the evidence is against his claim of entitlement to TDIU, and that claim must be denied. The Board acknowledges that VA is statutorily required to resolve the benefit of the doubt in favor of the veteran when there is an approximate balance of positive and negative evidence regarding the merits of an outstanding issue. That doctrine, however, is not applicable in this case because the preponderance of the evidence is against the Veteran's claim for a TDIU. See Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990); 38 U.S.C.A. § 5107(b).


ORDER

A disability rating in excess of 30 percent for chronic major depressive disorder and anxiety disorder, NOS, prior to June 10, 2010, is denied.

A disability rating of 50 percent, and no higher, for major depressive disorder and anxiety disorder, NOS is granted, from June 10, 2010 through August 3, 2010, subject to the laws and regulations governing the payment of monetary VA benefits. 

A disability rating in excess of 50 percent for chronic major depressive disorder and anxiety disorder, NOS, from August 4, 2010, is denied.

TDIU is denied.



____________________________________________
DAVID L. WIGHT
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs